IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MARTHA FROST, CASSANDRA STARGELL,
FELISHA MARSHALL and NORMA GIVENS,
On behalf of themselves and all others similarly situated          PLAINTIFFS

v.                         Case No. 5:08CV00078 JLH

DAN MCDONALD, GARY TACKETT, and
LINDA DONHAM, individually and in their official
capacities as employees of the Department of Finance
and Administration                                                 DEFENDANTS

**OPINION AND ORDER**

The plaintiffs initiated this action on March 21, 2008, alleging race discrimination in violation of their rights under 42 U.S.C. §§ 1981 and 1983 and the Arkansas Civil Rights Act ("ACRA"). The defendants have filed a motion for summary judgment, and the plaintiffs have responded. In their response, the plaintiffs abandon their ACRA claims for lack of subject matter jurisdiction. For the following reasons, the defendants' motion for summary judgment as to the remaining federal claims is granted in part and denied in part.

I.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The

moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

The plaintiffs are four African-American employees of the Office of Child Support Enforcement ("OCSE") in the Pine Bluff regional office. Felisha Marshall is an investigator in interstate support. She has a bachelor's degree from the University of Arkansas at Pine Bluff and over ten years of work experience at OCSE. Cassandra Stargell is an investigator in enforcement. She has a bachelor's degree from Tennessee State University and over ten years of cumulative work experience at OCSE. Stargell began working at OCSE in 1991; she left OCSE in 1998, and returned to the Pine Bluff office in 2002. Martha Frost has worked for OCSE since 1999. She started out as an investigator for child support enforcement and has since been promoted to legal secretary supervisor. Frost has a bachelor's degree in Business Administration from the University of

Arkansas at Pine Bluff. Norma Givens has worked for OCSE for twenty years and currently serves as a court liaison; she has an associate's degree.

The defendants are employees of the Department of Finance and Administration with supervisory authority over the plaintiffs. Dan McDonald is the OCSE administrator, and he approves all hiring decisions within OCSE. Gary Tackett is the field manager over Central and Southeast Arkansas and was directly involved in promoting Linda Donham to the position of program supervisor for the Pine Bluff, Lonoke, and Stuttgart offices. As program supervisor, Donham spends two to three days per week in the Pine Bluff office.

In early 2006, Tackett began accepting online applications for the position of program supervisor for the Pine Bluff, Lonoke, and Stuttgart offices. Plaintiffs Givens and Stargell submitted applications prior to the deadline. Donham did not submit her application before the deadline. According to Mr. Tackett, Donham contacted him, claiming that she was unable to submit her application in time. Tackett asked his supervisor to reopen the position, and as a result, OCSE re-advertised the regional manager position a second time and accepted additional applications, including Donham's application. At the time the position was reopened, no interviews had been conducted. Ultimately, Tackett interviewed Donham, Stargell, Givens, and three other employees for the position. Tackett says that Donham scored the highest in the interview process–forty points higher than the second ranked applicant–and, as a result, he promoted her to program supervisor. At the time of the interviews, Tackett wrongly believed that Donham had twenty years of work experience; in fact, she had ten years of experience.

In 2007, OCSE began accepting online applications for a new interstate supervisor position in the Pine Bluff office. Felisha Marshall applied for the position. Givens and Stargell claim that

they also applied for the position but that their applications were lost. According to Givens' deposition testimony, she asked Tackett and Donham if they could reopen the position so she could resubmit her application, and they told her that they could not. Stargell, on the other hand, did not notify Tackett, Donham, or anyone else at OCSE that her name was not on the list of applicants. Ultimately, Tackett and Donham interviewed eight applicants for the position. Tackett and Donham claim that Fritzie Robertson was one of two candidates with the highest interview scores and was selected for the position because her submission in a letter-writing assignment was superior to the that of the other top candidate.

The parties agree that working conditions at the Pine Bluff office have been less than desirable. Rats, snakes, and roaches have been found in the building on numerous occasions. The pest problem has been so bad that Tackett admitted he would not want his wife or daughter to work in that office. Donham says that she reported every pest problem to the landlord and that the pest problem recently was resolved after the access points for pests were sealed and the office was treated by pest control professionals. After inspecting the office in September 2009, Tackett also concluded that his prior opinion as stated in his deposition is no longer valid; there were no visible signs of pests. In addition to the pest problem, the plaintiffs also allege that they have fewer resources and less office space than other OCSE offices.

After she was promoted to program supervisor, Donham required employees in the three offices under her supervision to "refer five percent of their cases to legal," which occurs when there is no payment in an established child support case for more than thirty days. For Pine Bluff, that number translates to approximately twenty-five cases; in the Lonoke and Stuttgart offices, it translates to approximately fifteen cases. Employees are required to complete audits on each one

of the twenty-five cases they send to legal and check the cases other employees send to legal.

### III.

In analyzing the plaintiffs' discrimination claims, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *See Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 n.2 (8th Cir. 2003) (applying *McDonnell Douglas* to a Section 1981 claim); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to a Section 1983 claim). The plaintiffs must first establish a prima facie case of discrimination. To establish a prima facie case of discrimination, the plaintiffs must show that (1) they are members of a protected class; (2) they were meeting their employer's legitimate job expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008) (citing *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007)). If the employees establish a prima facie case, then the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for the adverse action, meaning that the presumption of unlawful discrimination disappears. *Carraher*, 503 F.3d at 716 (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)). If the employer provides such a reason, the plaintiffs must then show that the proffered reason is a pretext for the unlawful discrimination. *Id.* Where an employee is unable to show pretext, summary judgment is appropriate. *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988).

The defendants concede that the plaintiffs are members of a protected class who are meeting the legitimate expectations of their employer. They argue, however, that the plaintiffs were not subjected to any adverse employment action and that there are no similarly situated, unprotected employees who were treated differently than the plaintiffs. In their complaint, the plaintiffs allege

that African Americans are treated differently from other employees in three ways: (1) the promotions process favors employees who are not African American, (2) African-American employees have heavier case loads than Caucasian employees, and (3) African Americans are subjected to a poorer working environment than Caucasians.

**1. PROMOTIONS PROCESS**

To succeed on a failure to promote claim, each plaintiff must establish that "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007). In this case, two promotions are at issue: Donham's promotion to program supervisor over Givens and Stargell, and Fritzie Robertson's promotion to interstate supervisor over Givens, Stargell, and Marshall.[1]

Plaintiffs Givens and Stargell are African-American employees who applied for the program supervisor position and met the minimum qualifications for that position. Neither plaintiff was hired for the position; instead, Tackett hired Donham. The defendants argue that Givens and Stargell have not established a prima facie case of discrimination based on these facts because the plaintiffs cannot prove that they were as qualified for the position as Donham. Furthermore, the defendants contend that, even if the plaintiffs have established a prima facie case, Tackett had a legitimate, non-discriminatory reason for hiring Donham instead of Givens or Stargell: Donham had the highest

---

[1]The plaintiffs' brief also mentions that Frost was promoted to legal supervisor after this lawsuit was filed. This was the only promotion for which she ever applied. Because she received the promotion, Frost cannot establish a prima facie case of race discrimination. *See Allen*, 475 F.3d at 937 (listing the four criteria of a prima facie case).

overall score following the interviews, she had management experience, and she demonstrated better people skills than the other candidates.

The defendants incorrectly contend that Givens and Stargell must show that they were as qualified for the position as Donham. To establish a prima facie case, a plaintiff "need only show that she has 'the minimum requirements for the position.' It is inappropriate to weigh [the] Plaintiff's qualifications against those of the selected candidate at this stage of the litigation. Rather, such weighing of qualifications properly takes place during the pretext stage." *Lidge-Myrtil v. Dear & Co.*, 857 F. Supp. 666, 670 (W.D. Mo. 1994) (quoting *Netterville v. State of Mo.*, 800 F.2d 798, 802-03 (8th Cir. 1986)) (internal citations omitted). The defendants admit that Givens and Stargell had the minimum qualifications for the position, but they offer a legitimate, non-discriminatory reason as to why neither plaintiff was hired. Thus, the burden is on the plaintiffs to establish that the defendants' proffered reason is a pretext for discrimination.

The plaintiffs attempt to prove pretext in three ways: First, they offer a sworn statement of Nadine Hoke, an African-American employee at the Pine Bluff office who says that Tackett told her that he hired Donham because he could shape and mold her. The plaintiffs also contend that "Donham had to be trained by her subordinates," and that such evidence proves that Donham was not the most qualified candidate for the position. Finally, the plaintiffs point out that OCSE reopened the position so that Donham could apply, but refused to reopen a different position when Givens requested it. Taken together, this evidence is sufficient to create an issue of fact as to whether the defendants' proffered reason for hiring Donham, that she was the most qualified candidate for the position, is a pretext for race discrimination.

Plaintiffs Stargell, Givens, and Marshall also applied for the interstate supervisor position

that ultimately went to Fritzie Robertson, who is not an African American. The defendants do not deny that the plaintiffs were minimally qualified for the position. However, they proffer two legitimate, non-discriminatory reasons for failing to promote the plaintiffs.

First, the defendants say that they did not promote Givens or Stargell because the human resources department never received their electronic applications. Yet, Givens asked Tackett and Donham to reopen the interstate supervisor position once she realized that her application was missing, and they denied her request. According to Tackett, an available position at OCSE can be reopened after the application deadline if the human resources department is missing an employee's application. In fact, Tackett admitted that OCSE had reopened the program supervisor position for Donham in 2006, after she missed the deadline. In his deposition, Tackett could not explain why the interstate supervisor position was not reopened for Givens. Viewing the evidence in the light most favorable to the plaintiffs, there is an issue of material fact as to whether the defendants' proffered reason is a pretext for discrimination.[2] *See Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002) (finding that the employer's nondiscriminatory reason for failing to promote an employee was pretextual where stated reason, that employee did not supplement his application with proof of equivalent course work in lieu of required courses, was negated by evidence that employer's human relations department occasionally contacted applicants who appeared to lack required courses to inquire about equivalent course work, but failed to contact employee).

The defendants argue that, even if the OCSE had received Givens' or Stargell's applications,

---

[2]Stargell did not tell Tackett or Donham that her application had not been received, but according to Tackett, when a position is reopened, it is reopened for everyone. Thus, if Tackett and Donham had reopened the position for Givens, Stargell would have been able to apply.

neither plaintiff would have been hired because they were less qualified than Robertson for the position. This argument is insufficient for two reasons: First, such *post hoc* rationalizations are prohibited under the *McDonnell Douglas* test. *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007). An employer must articulate a legitimate, nondiscriminatory reason for not hiring a plaintiff that "*actually* motivated the decision." *Id.* (citing *Hill v. Seaboard C.L.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985)) (emphasis in original). It is not enough that the employer proffers a reason that theoretically could have motivated the promotion decision. Furthermore, Donham and Tackett chose Robertson for the position by conducting interviews and then giving the top two candidates a letter-writing assignment. Even if Robertson was more qualified for the position than the plaintiffs, as the defendants contend, either Givens or Stargell may have been more qualified than the other top candidate and capable of outperforming Robertson on the letter-writing assignment. In other words, it is possible that Givens or Stargell would have been promoted instead of Robertson.

The defendants also contend that Robertson was more qualified than Marshall for the interstate supervisor position because Robertson had interstate experience. However, according to Marshall's testimony, Robertson asked Marshall for help after she took the position because Robertson had never worked in the interstate department before. Marshall also testifies that she trained Robertson because, before the interstate supervisor position was created, Marshall had been doing much of that work. Viewing these facts in the light most favorable to the plaintiff, a genuine issue of material fact exists as to whether the defendants' proffered reason for failing to promote Marshall is a pretext for race discrimination.

Defendants Tackett and Donham are not entitled to summary judgment on the plaintiffs' failure-to-promote claims because there are genuine issues of material fact yet to be decided. The

plaintiffs have provided some evidence that could lead a reasonable jury to conclude that the promotions process was discriminatory. The plaintiffs offer no evidence, however, that would tie McDonald to that alleged discrimination. Rather, the plaintiffs contend that McDonald violated their rights simply by approving the promotion decisions that Donham and Tackett made. This evidence is insufficient to establish a prima facie case of race discrimination against McDonald. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). As a result, McDonald is entitled to summary judgment on the plaintiffs' failure-to-promote claims.

**2. WORKLOAD**

The plaintiffs also allege that African-American OCSE employees have higher work loads than other employees. To establish their prima facie case, the plaintiffs point to evidence that employees in the Pine Bluff office, which is predominantly African American, are required to complete twenty-five legal cases while other offices are required to complete only fifteen. The defendants rebut this evidence with a legitimate, non-discriminatory reason for the difference: over a year ago, Donham required the offices under her supervision–Pine Bluff, Stuttgart, and Lonoke–to refer five percent of their cases to legal. For Pine Bluff, this translated to twenty-five cases; for the other two offices, it translated to fifteen cases. The plaintiffs still claim that employees at the Pine Bluff office have to handle more cases than employees at other offices. However, they offer no evidence that the defendants' proffered reason for the disparity is pretext for discrimination. As a result, the plaintiffs have failed to meet their burden under the *McDonnell Douglas* analysis.

### 3.  WORKING ENVIRONMENT

Finally, the plaintiffs allege that the Pine Bluff office is a poorer working environment than any of the predominantly Caucasian offices because rats, snakes, and roaches have infested the building; the office is too small; and the office equipment is older than that used in other offices. In other words, they claim that they have been subject to disparate treatment. *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.") The defendants argue that there is no evidence of disparate treatment with regards to the office equipment, and they offer a legitimate, non-discriminatory reason for the past infestations: the location of the Pine Bluff office. Furthermore, they contend that each time pests have intruded the building, it has been reported and remedied.

Even if the plaintiffs have established a prima facie case of disparate treatment in light of the poor working conditions in the Pine Bluff office, they have failed to rebut the defendants' legitimate, non-discriminatory reasons for those conditions.  The defendants contend that the Pine Bluff office has had pest problems because the office is located next to a field–not because of any racial animus on the part of the defendants.  They allege that changing weather conditions have driven pests into the building.  Furthermore, Donham works in the Pine Bluff office two to three days per week.  She contends that she responded to these problems just as she would have in any other office: by contacting the landlord and pest control professionals.  The plaintiffs offer no evidence to the contrary.  The defendants also allege that all equipment, with the exception of fax machines and printers, is replaced on a scheduled basis.  Copiers in all OCSE offices are replaced approximately every three years, and computers are replaced every three to four years as determined by the IT

department. Fax machines and printers are replaced as needed. Although the plaintiffs' affidavits evidence a belief that the other offices have better equipment and more work space, those affidavits alone are insufficient to defeat a motion for summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). The plaintiffs in this case have not substantiated these allegations with sufficient probative evidence that would permit a jury to find in their favor on these claims. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).[3]

### IV.

Although they are not entitled to summary judgment on the plaintiffs' failure-to-promote claims, the defendants allege that they are immune from suit for money damages in their official capacities. The Eleventh Amendment shields states from suits by individuals. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). To ensure enforcement of federal law, however, the Eleventh Amendment permits suits for prospective relief against state officials acting in violation of federal law. *Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004) (citing *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) and *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).

A lawsuit brought against a state official in his "official" capacity is no different from a suit against the state itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64-71, 109 S. Ct. 2304, 105

---

[3]To the extent that the plaintiffs allege a disparate impact claim under Section 1981 or Section 1983, this Court grants summary judgment in favor of the defendants. To establish a prima facie case of disparate impact, a plaintiff must (a) identify "the specific employment practice that is challenged" and (b) "offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 2788-89, 101 L. Ed. 2d 827 (1988). The plaintiffs have not met their burden in this case.

L. Ed. 2d 45 (1989). Unless the state has waived its sovereign immunity or Congress through legislation has abrogated the states' immunity, a state official cannot be sued for money damages in his official capacity. *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985).

The State of Arkansas has not consented to be sued in federal court, and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. §§ 1981 and 1983. *See Will*, 491 U.S. at 66 ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Bakhtiari v. Lutz*, 507 F.3d 1132, 1138 (8th Cir. 2007) (finding plaintiff's claims for relief under Sections 1981 and 1983 against defendants in their official capacities barred); *Singletary v. Mo. Dep't of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005 (finding Section 1981 claims barred). Thus, the defendants cannot be sued for money damages in their official capacities. They are not, however, immune from suit for prospective relief.

## V.

The defendants believe that they are entitled to qualified immunity for all claims brought against them in their individual capacities. Qualified immunity involves a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional and statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The United States Supreme Court recently determined that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

This Court has already decided that there is a genuine issue of fact as to whether Donham and Tackett failed to promote the plaintiffs because of their race. The only question other question is

whether the remaining two defendants may have violated a clearly established right. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The Eighth Circuit broadly construes "clearly established law" for the purposes of a qualified immunity inquiry. *Lockridge v. Bd. of Trustees of Univ. of Ark.*, 315 F.3d 1005, 1016 (8th Cir. 2003). "[I]t has been clearly established for many years that the Equal Protection Clause prohibits a State, when acting as employer, 'from invidiously discriminating between individuals or groups' based upon race." *Murphy v. State of Ark.*, 172 F.3d 750, 755 (8th Cir. 1997) (citing *Washington v. Davis*, 246 U.S. 229, 239, 96 S. Ct. 2040, 2047, 48 L. Ed. 2d 597 (1976)). If Donham and Tackett in fact failed to promote the plaintiffs because they are African American, then they violated that clearly established right. Thus, Donham and Tackett are not immune from suit on the plaintiffs' failure-to-promote claims.

## CONCLUSION

Stargell, Marshall, and Givens have produced sufficient evidence for this Court to find a genuine issue of material fact as to whether Tackett and Donham discriminated against them in the promotions process. However, the plaintiffs offer no evidence to indicate that McDonald also acted in a discriminatory manner. Nor have the plaintiffs provided enough evidence to create a genuine fact issue as to whether their heavy workload and poor working environment are attributable to racial discrimination.

For these reasons, the defendants' motion for summary judgment is denied with respect to the failure-to-promote claims against Tackett and Donham. The motion is granted with respect to the failure-to-promote claims against McDaniel as well as all other claims against the defendants.

The plaintiffs may seek both monetary and equitable relief in their claims against Tackett and Donham individually. However, the plaintiffs may seek only equitable relief in their claims against Tackett and Donham in their official capacities.

 IT IS SO ORDERED this 2nd day of November, 2009.

                _____
                J. LEON HOLMES
                UNITED STATES DISTRICT JUDGE